# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                                                  Case No. 11-CR-226

**MARGARET KEEFE,**

    **Defendant.**

## ORDER ON DEFENDANT'S PRETRIAL MOTIONS

On October 18, 2011, a federal grand jury in the Eastern District of Wisconsin returned a six-count indictment charging Billy Cannon, Sr. and Margaret Keefe with various violations of federal law relating to an alleged mortgage fraud scheme. The first four counts of the indictment charge Cannon and Keefe with wire fraud in violation of 18 U.S.C. §§ 1343 and 2. Counts Five and Six charge only Cannon with money laundering in violation of 18 U.S.C. §§ 1957 (a) and 2. Keefe was arraigned on the charges and entered a plea of not guilty. The final pre-trial conference and the trial before the Honorable Lynn Adelman have been adjourned. A status hearing is scheduled for March 1, 2012.

Keefe filed two pretrial motions: (1) Motion for Disclosure (Docket #12) and (2) Motion for Severance (Docket #14). The government filed responses to both motions. The motions are now ready for resolution. For the reasons discussed below, Keefe's motion for disclosure will be denied as moot and her motion for severance will be denied without prejudice.

# BACKGROUND

**I.  Indictment**

The indictment alleges that Cannon and Keefe devised and participated in a scheme to defraud and obtain money from banks by fraudulent representations. (Indictment, ¶ 5.) From June 2006 through 2007, Cannon worked as a loan officer at United Lending, a mortgage broker. (Indictment, ¶ 1,2.) Cannon was also the sole owner of Alledi and Associates, LLC, a company involved in real estate investment and construction (Indictment, ¶ 4.) During that same time period, Keefe was a closing agent at Badger State Title and Trump Title. (Indictment, ¶ 3.)

The indictment charges that Cannon and others paid straw buyers to use their names, credit histories, and signatures on mortgage loan documents to fraudulently obtain funding to purchase residential properties in Milwaukee, Wisconsin at inflated prices (Indictment, ¶ 6, 7.) Cannon, as the loan officer for the transactions, knowingly signed materially false loan applications that were prepared on behalf of the straw buyers. (Indictment, ¶ 9.) The loan applications allegedly contained numerous false representations including an inflated purchase price for the properties. (Indictment, ¶ 9.) In addition to the false loan applications, false closing statements were allegedly submitted to the lenders. (Indictment, ¶ 11.) The closing statements falsely stated that the straw buyers were bringing their own funds to the closing, although Cannon used Alledi and Associates, LLC funds to satisfy the cash due from the borrower at closing. (Indictment, ¶ 11.) The closing statements also falsely reflected that the seller received the bulk of the proceeds from the real estate transaction. (Indictment, ¶ 12.)

As the closing agent, Keefe allegedly did not disburse the funds as reflected in the closing statements. (Indictment, ¶ 12.) Instead, she allegedly fraudulently issued and endorsed checks payable to Alledi and Associates, LLC at the closings. (Indictment, ¶ 13.) Keefe disbursed at least

2

$20,000 of the seller's funds to Cannon at each closing, and did not disclose these payments to the lender. (Indictment, ¶ 13.) Keefe purportedly concealed the payments to Cannon by issuing and endorsing checks at closing for the full amount due to the sellers as reflected in the closing statements. (Indictment, ¶ 14.) Keefe then forwarded these checks to the lender. (Indictment, ¶ 14.) The sellers never received the check (Indictment, ¶ 14.)

Based on the false representations in the loan applications and the closing statements, banks and lending institutions funded the loans through the use of interstate wires. (Indictment, ¶ 15.) After completing the closings on the properties, the straw buyers failed to make payments on the mortgages and the properties went into foreclosure shortly after their purchase. (Indictment, ¶ 16.) As a result, lending institutions allegedly incurred losses of more than $400,000. (Indictment, ¶ 16.)

## DISCUSSION

**I.    Motion for Disclosure**

Keefe requests that the government disclose any evidence it intends to introduce at trial which arguably, or in fact, constitutes other crimes, wrongs, or acts evidence pursuant to Federal Rule of Evidence 404(b). (Defendant's Motion for Disclosure at 1, Docket #12.) The government responds that it met with the defendant's counsel two days after the motion was filed and that all other acts evidence, "if not provided directly to counsel, has been made available." (Government's Response to Motion for Disclosure at 1, Docket #15.) Additionally, the government explained that should it attempt to introduce such evidence at trial, it will provide a notice detailing the specific other acts evidence seven days before trial. (*Id.*) The defendant did not object to the government's response. Because the government plans to disclose any Rule 404(b) evidence it intends to introduce at trial, the Court will deny Keefe's motion for disclosure as moot.

## II. Motion to Sever

Keefe also requests severance from her co-defendant, Cannon, arguing that she is prejudiced by joinder pursuant to Fed. R. Crim. P. 14. (Defendant's Motion for Severance at 1, Docket #14). Specifically, she asserts that Cannon's proffer statements directly implicate her in the alleged scheme. (Memorandum of Law in Support of Defendant's Motion for Severance at 3, Docket #14.)

During the course of the investigation of the alleged scheme, Cannon debriefed pursuant to a proffer agreement. (Mem. at 1-2.) On two occasions, Cannon purportedly gave detailed information, completely inculpating himself in the charged transactions and acknowledging virtually every aspect of the alleged scheme. (Mem. at 2.) During the course of the debriefs, Cannon also advised law enforcement officials that the majority of the transactions in which he was involved were closed by Keefe. (Mem. at 2.) Cannon alleged that "... everyone involved in these transactions knew what was going on. Everyone received money." (Mem. at 2.) Cannon also advised that he dictated to Keefe how the proceeds of the sale would be distributed. (Mem. at 2.) Cannon further said that Keefe never asked about the source of the borrower funds which were brought to the closing. (Mem. at 2.) According to Cannon, no one wanted the lender to know how the funds were actually dispersed. (Mem. at 2-3.) Lastly, Cannon acknowledged that a lending institution would not have approved of a transaction in the manner in which it was alleged in the indictment. (Mem. at 3.)

Keefe argues that there is a real possibility that Cannon's statements, implicating her in the charged crime, may be introduced at trial by the government, contrary to *Bruton v. United States*, 391 U.S. 123 (1968). (Mem. at 3.) She further argues that in the event the statement is offered, neither a limiting instruction nor a redaction of Keefe's name or position would provide fair protection to her. (Mem. at 3.)

4

Case 2:11-cr-00226-LA   Filed 01/11/12   Page 4 of 7   Document 23

In opposing the motion, the government responds that Keefe's motion is premature because too many variables are unknown. (Government's Brief at 3, Docket #16). In particular, the government argues that *Bruton* is not implicated if Cannon resolves his case short of trial or if Cannon testifies against Keefe at trial. (Gov't. Br. at 3.) Further, the government asserts that at present, Cannon has stated a desire to resolve his case by entering a plea. (Gov't. Br. at 3.) The government also argues that the proffer interview could only be introduced by the government if Cannon takes a position contrary to his statements regarding the mortgage fraud scheme in his proffer interview. (Gov't. Br. at 3.) Thus, the government requests that Keefe's motion to sever be denied without prejudice at this time. (Gov't. Br. at 3.)

Charges against multiple defendants may be brought in a single indictment if the defendants are alleged to have participated in the same series of acts or transactions which constitutes the offense. Fed.R.Crim.P. 8(b). Keefe does not dispute that she is properly joined under Rule 8(b). Rather, she argues that severance is appropriate under Fed.R.Crim.P. 14(a) because joinder is prejudicial. Rule 14 provides that a court may sever the defendants' trials, or provide any other relief that justice requires, if the joinder of defendants in an indictment appears to prejudice a defendant. Nonetheless, there is a strong preference for a single trial with co-defendants who have been jointly indicted. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id*. Thus, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539.

In *Bruton v. United States*, the Supreme Court held that admission of a co-defendant's confession inculpating the defendant at a joint trial where the co-defendant does not testify, and therefore cannot be cross-examined, violates a defendant's Sixth Amendment right to confrontation. 391 U.S. 123, 127-28 (1968). The Court later held that the confrontation clause is not violated when a co-defendant's confession is redacted to omit any references to the defendant and the court gives a proper limiting instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 n. 5 (1987). Similarly, the Seventh Circuit has concluded that a defendant's "redacted confession may be admitted as long as the redaction does not obviously refer to the co-defendants." *United States v. Hernandez*, 330 F.3d 964, 973 (7th Cir. 2003).

In this case, the statements at issue were given pursuant to a proffer agreement. Cannon's proffer statements allegedly implicating Keefe can only be introduced by the government if he takes a position at trial contrary to his statements regarding the mortgage fraud scheme in his proffer interview. At this time, it is unclear whether Cannon will exercise his right to a trial, whether he will testify, or whether he will take a position contrary to his statements given in his proffer interview. The government explains that Cannon has indicated that he wishes to resolve his case by entering a plea. Additionally, the government has not identified which, if any, statements it will seek to admit at trial. Moreover, without the content of the statements, it is unclear whether *Bruton* issues could be avoided if these statements were redacted or if the jury would be given a limiting instruction confining consideration of the statements to Cannon. Given the uncertainty of the circumstances at hand and the strong preference for a joint trial, the Court cannot conclude that severance is warranted at this time. This motion would be best addressed if and when the government states that

it intends to introduce evidence of Cannon's statements from the proffer interview. Accordingly, Keefe's motion for severance will be denied without prejudice to its reassertion at a later date.

**THEREFORE, IT IS ORDERED** that the defendant's motion for disclosure (Docket #12) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the defendant's motion for severance (Docket #14) is **DENIED without prejudice**.

**SO ORDERED** this 11th day of January, 2012 at Milwaukee, Wisconsin.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge